**SUSAN MARTIN (AZ#014226)**
**DANIEL BONNETT (AZ#014127)**
**JENNIFER KROLL (AZ#109859)**
**MARTIN &BONNETT, P.L.L.C.**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone: (602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com

Attorneys for Plaintiffs and the Putative Class

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| BLAZ VALDEZ, CHRISTOPHER KROH, and JORGE A. CHAVEZ Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>V.<br><br>MERLE'S AUTOMOTIVE SUPPLY, INC. and ACT FAST DELIVERY OF TUCSON, INC.,<br><br>Defendants. | CASE NO: _____<br><br>**PLAINTIFFS'**<br>**CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

Plaintiffs, on behalf of themselves and all other similarly situated employees allege:

1. This is an action to recover wages owed under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Arizona wage statute, A.R.S. § 23-350 *et seq.*, and the Arizona Minimum wage law, A.R.S. § 23-363 *et seq.*

2. This action is brought as a collective action under the FLSA, 29 U.S.C. § 216(b), to recover minimum wages, overtime wages, liquidated damages, attorneys' fees and other statutory penalties resulting from Defendants' violations of the FLSA.

3. This action is also brought as a class action under Rule 23 of the Federal Rules of Civil Procedure to recover unpaid overtime and minimum wages, unlawful deductions from wages, compensatory damages, treble damages, attorneys' fees and other statutory penalties resulting from Defendants' violations of the Arizona wage statutes.

4. For at least the three year period prior to the filing of this action, Defendants have knowingly misclassified Plaintiffs and Class Members, as defined below (collectively referred to as "Drivers," "Plaintiffs," and/or "Class Members") as independent contractors and failed to pay them their statutorily required minimum wages and overtime compensation and made unlawful deductions from their earned compensation.

5. Even though the Defendants in combination act as Plaintiffs' employers, Defendants benefit greatly by misclassifying their Drivers as independent contractors. Defendants operate a scheme to treat the Drivers as independent contractors and shift Defendants' business expenses to their employees. Defendants require Plaintiffs to pay for insurance, gas, repairs and maintenance of their own vehicles. Defendants also charge Plaintiffs a percentage of their pay just to issue their weekly their compensation by paying them through a debit card instead of a payroll check or direct deposit.

6. By treating the Drivers as independent contractors instead of employees, Defendants have engaged and continue to engage in a scheme to avoid worker' compensation and unemployment payments, social security, other payroll taxes owed by employers, and other benefits otherwise owed to employees. Defendants have attempted and continue to attempt to avoid liability under wage protection statutes, federal labor laws, and other statutes. By classifying their Driver workforce as independent contractors, Defendants are able to obtain a vast competitive advantage over similar companies that operate within the confines of the law  by shifting a significant portion of the cost of their business expenses to their employees. As a result, Defendants' practices drive down wages, stifle competition and undercut fair labor practices across the industry.

///

**JURSIDICTION AND VENUE**

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is civil action arising under the laws of the United States. Specifically, this action is brought under the FLSA, 29 U.S.C. § 216(b).

8. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims are sufficiently related and/or part of the same case or controversy as the federal FLSA claims.

9. This Court has personal jurisdiction over the Defendants because they regularly transact business in the state of Arizona and have significant and continuous contacts with Arizona. Additionally, both Defendants are Arizona corporations.

10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the acts or omissions giving rise to the claims in this action occurred in this district, including many of the wrongs herein alleged.

**PARTIES**

11. Plaintiff Blaz Valdez is a resident of Santa Cruz County, Arizona. He is a former employee of Defendants within the meaning of A.R.S. § 23-350 and 29 U.S.C. § 203(e)(1). Plaintiff Valdez became familiar with Defendants' operations as they relate to this action during his tenure of employment with Defendants. At all times he was employed by and performed work for them, Defendants unlawfully classified him as an independent contractor. Plaintiff Valdez has agreed to act as a class representative and his consent to sue is attached as Exhibit "A" to this action.

12. Plaintiff Christopher Kroh is a resident of Pima County, Arizona. He is a former employee of Defendants within the meaning of A.R.S. § 23-350 and 29 U.S.C. § 203(e)(1). Plaintiff Kroh became familiar with Defendants' operations as they relate to this action during his tenure of employment with Defendants. at all times he was employed by and performed work for them, Defendants unlawfully classified him as an independent contractor. Plaintiff Kroh has agreed to act as a class representative and his consent to sue is attached as Exhibit "B" to this action.

13. Plaintiff Jorge Chavez is a resident of Pima County, Arizona. He is a current employee of Defendants within the meaning of A.R.S. § 23-350 and 29 U.S.C.

3

§ 203(e)(1). Plaintiff Chavez is familiar with Defendants' operations as they relate to this action by virtue of the work performed for them during his employment during his tenure of employment with Defendants. At all times relevant, Defendants have unlawfully classified him as an independent contractor. Plaintiff Chavez has agreed to act as a class representative and his consent to sue is attached as Exhibit "C" to this action.

14. Defendant Merle's Automotive Supply, Inc. ("Merle's") is an Arizona corporation headquartered in Tucson, Arizona. Merle's lists on its website that it is engaged in the business of automobile parts retail and distribution. The Arizona Corporation Commission lists Merle's registered statutory agent as David McEvoy, 4560 E. Camp Lowell Dr., Tucson, Arizona 85712.

15. Defendant Act Fast Delivery of Tucson, Inc. ("Act Fast") is an Arizona corporation headquartered in Phoenix, Arizona. Act Fast lists on its website that it is engaged in the business of logistics management. The Arizona Corporation Commission lists Act Fast's registered statutory agent as Business Filings Incorporated, 2390 E Camelback Rd, Phoenix, Arizona 85016.

16. The Class Members are all current and former drivers who have worked or are working for Defendants at any time within the three year period preceding the commencement of this action and who have been or are misclassified as independent contractors. The Class Members are employees of the Defendants within the meaning of A.R.S. § 23-350 and 29 U.S.C. § 203(e)(1).

17. At all times relevant to this action and continuing to this day, Defendants have employed Drivers throughout Arizona.

## FLSA AND ARIZONA WAGE ACT COVERAGE

18. At all material times, Defendants have been and are "employers" within the meaning of the FLSA and Arizona law. 29 U.S.C. § 203(d) and Ariz. Rev. Stat. § 23-350(3).

19. At all material times, Plaintiffs and Class Members have been non-exempt "employees" within the meaning of the FLSA and "employees" under Arizona law. 29 U.S.C. § 203(e)(1) and Ariz. Rev. Stat. § 23-350(2).

20. At all material times, each Defendant has been and remains an "enterprise" within the meaning of the FLSA by virtue of the business each conducts as described herein. 29 U.S.C. § 203(r). As further described herein, Merle's and Act Fast were and/or are joint employers of Plaintiffs and Class Members or, in the alternative, formed a joint enterprise for purposes of coverage under the FLSA and the Arizona wage statutes.

21. As set forth herein, at all material times, each Defendant has been and remains an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1). Each Defendant has had and continues to have employees engaged in commerce.

22. At all material times, each Defendant has had an annual gross business volume of not less than $500,000.

23. During the relevant time period, Act Fast has operated and continues to operate a business principally consisting of logistic management, namely furnishing drivers for delivery companies around the country. In its contracts with its Drivers, Act Fast identifies itself as a "delivery service."

24. During the relevant time period, Merle's has operated and continues to operate a business primarily consisting of retail sales and distribution of automobile parts.

25. Act Fast and Merle's formed a joint employment relationship with respect to Plaintiffs and the Class Members in furtherance of their respective business purposes including, but not necessarily limited to, delivery of auto parts to customers of Merle's by work performed by Plaintiffs and Class Members.

26. As described herein, at all material times, Defendants have jointly directed and controlled the hours and work of Plaintiffs and Class Members.

27. As described herein, at all material times, Defendants have jointly provided training to, supervised the work of, and maintained the ability to fire Plaintiffs and Class Members.

28. As described herein at all material times, Defendants have jointly provided direction to Plaintiffs and Class Members and have jointly maintained

5

communication with, and shared control of Plaintiffs and Class Members with regard to the assignment, method, manner and monitoring the progress of their work and deliveries.

29. As such, Defendants are each directly, jointly, and severally liable for the violations in this case perpetrated against Plaintiffs and Class Members.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

30. Count I asserted below is properly maintainable as a collective action under 29 U.S.C. § 216(b).

31. Counts II and III are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

32. For both collective and class action purposes, the proposed collective action and class includes:

> All current and former drivers who performed delivery services for Act Fast and were or are classified as independent contractors and/or not classified as employees within three (3) years of the date this action commenced. Those individuals are referred to in this complaint interchangeably as the Class Members or Drivers. The proposed class includes the follow subclass of Drivers:

> A. All Drivers who are or have performed delivery work for Defendant Merle's while receiving payment from Defendant Act Fast.

33. The proposed Class Members are so numerous that joinder of all members is impracticable. Upon information and belief there are several hundred members of the proposed Class and its delineated subclass together throughout Arizona.

34. There are questions of law and fact common to the Class that predominate over any questions solely affecting individual members of the Class, including but not limited to:

  a. Whether one or both Defendants are or were Plaintiffs' employers;

  b. Whether one or both, Defendants are required to and failed to pay Plaintiffs' and Class Members' statutory minimum wages;

  c. Whether one or both Defendants are required to and failed to pay Plaintiffs' overtime for all hours worked in excess of forty hours per week;

6

    d. Whether one or both Defendants' failure to pay wages violates state and common law;

    e. Whether Plaintiffs and Class Members were improperly classified as independent contractors;

    f. Whether one or both Defendants were unjustly enriched by the acts and omissions complained of herein;

    g. Whether one or both Defendants made or make unlawful deductions to Plaintiffs' wages or unlawfully required the Drivers to bear Defendants' business expenses for vehicles, equipment, gas, insurance, and other costs and expenses of the employers' business;

    h. Whether one or both Defendants wrongfully required Plaintiffs to expend money on Defendants' behalf;

    i. The number of hours for which Plaintiffs' and Class Members' salary was intended to compensate;

    j. The nature and extent of Plaintiffs' and Class Members' injury and the appropriate measure of damages for the Classes.

35. The claims of Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and Class Members work or have worked for Defendants and have been subjected to common practices and policies of failing to pay all wages and overtime owed, and making unlawful and excessive deductions from their wages.

36. Defendants acted or refused to act on grounds generally applicable to the Class Members as a whole by engaging the same violations of law with respect to the Class Members, thereby making any final relief appropriate with respect to the Class as a whole.

37. Plaintiffs will fairly and adequately represent and protect the interests of the Class and each subclass.

38. Plaintiffs have retained counsel competent and experienced in complex wage and hour litigation and class and collective action litigation.

39. The Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

7

40. A Class Action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation such as the instant case where individual workers lack the financial resources to vigorously prosecute a lawsuit in federal court against one of the largest delivery conglomerates in the state.

41. Furthermore, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## **FACTS**

42. Defendant Act Fast is a delivery company that delivers automobile parts for Defendant Merle's across the greater Tucson and surrounding area.

43. Defendant Merle's operates fourteen automobile parts stores across the Tucson area.

44. At all material times, Defendant Merle's contracts and has contracted with Defendant Act Fast to provide delivery drivers, such as Plaintiffs and Class Members, to deliver automobile parts from Merle's stores and distribution points within Arizona to its customers, typically local or neighboring automobile repair shops.

45. Plaintiffs Valdez, Kroh and Chavez, and the class they seek to represent are delivery drivers who are currently working or have worked jointly for Defendants Act Fast and Merle's.

46. Plaintiff Valdez worked as a driver delivering auto parts for Defendants from approximately September 2011 until November 2013.

47. Plaintiff Kroh worked as a driver delivering auto parts for Defendants from approximately August 2012 until October 2013.

48. Plaintiff Chavez began working for Defendants as a driver delivering auto parts beginning in 2006 as is still currently working for Defendants as a driver delivering auto parts. For the duration of his employment, Plaintiff Chavez worked from the same Merle's location.

49. Each Plaintiffs has worked out of multiple Merle's locations across Tucson and in the surrounding area or has interacted on a daily basis with other drivers who have performed and are performing the same or similar job duties.

50. Plaintiffs have firsthand knowledge of Defendants' compensation practices which include the payment of a flat salary regardless of the amount of hours Defendants' drivers work, the current payment scheme of using debit cards in lieu of payroll checks, as well as the deductions Defendants' make from their drivers' compensation for debit card processing fees and cargo insurance.

51. While working for Defendants, during the applicable time period, Plaintiffs were paid a flat gross weekly salary ranging from $400 to $450 before deductions. Drivers' compensation is set by one or both Defendants.

52. While working for Defendants, Plaintiffs and Class members are and were required to deliver auto parts as directed by Defendants.

53. While working for Defendants, Plaintiffs and Class members are and were required to work and have worked a set schedule from 8 AM to 5 PM every weekday, Monday through Friday, although their final delivery runs frequently require that they work beyond 5 pm in order to complete all assigned daily deliveries.

54. Additionally, Defendants have required and continue to require Plaintiffs and Class members to work every other Saturday.

55. Defendants do not and have not allotted any time to Plaintiffs and Class members for lunch or breaks.  If Plaintiffs or Class members want to eat lunch, they have been and continue to be required to do so behind-the-wheel while on the move between deliveries and while still performing work for Defendants.

56. As such, Plaintiffs and Class member work and/or have worked a schedule for Defendants consisting of at least 45 hours a week followed by a 54 hour week when required to work Saturday for the same fixed amount with no additional compensation.

57. At all material times, Plaintiffs and Class members were told that they are guaranteed a monthly bonus, typically $100, if they did not miss a scheduled work day in any given month.

9

58. Because Plaintiffs and Class members have been misclassified as independent contractors by Defendants, they received no overtime compensation for any hours worked in excess of 40 hours per week.

59. Defendants controlled the majority, if not all, of the Plaintiffs and Class Members' work. For example, a typical work day for a driver consists of arriving to work at their assigned Merle's store, receiving their first delivery assignment, making that delivery, and returning to the store for his or her subsequent delivery. This process repeats throughout the day.

60. Deliveries are assigned by a Merles' dispatcher and the dispatcher directs the Drivers which route he or she is to take when making the delivery.

61. Class Members and Plaintiffs are not allowed and do not exercise independent judgment or discretion regarding their work for Defendants. All independent judgement and discretion is subsumed by adherence to Defendants' scheduling requirements and route micromanagement.

62. Defendants control the method, manner, and time that Plaintiffs and Class Members deliver automobile parts to Merle's customers. Defendants assign the number of stops that Plaintiffs must make, the number of locations to which Plaintiffs must deliver parts, how many parts must be delivered each day and the time of day each part must be delivered.

63. Plaintiffs and Class Members have been and continue to be required to report on a daily basis to an employee of Merle's who is a Merle's dispatcher. Merle's dispatchers monitor the daily routes and scheduled deliveries of Plaintiffs and Class members and share information about the drivers' performance to Act Fast.

64. Class Members and Plaintiffs have been told that if they fail to follow Defendants' instructions, directions, rules, policies, or procedures they will be terminated as drivers and that this can be done at the behest of either Defendant. Plaintiffs are aware of several drivers who have been terminated under such circumstances. Termination recommendations typically originate with Merle's and are executed by Act Fast.

65. Plaintiffs and Class Members have been told by Defendants that they cannot delegate their work to other drivers without advanced permission from Defendants.

66. Drivers work for Defendants for an extended period of time, often exceeding a year, as is typical of employees. As set forth, Plaintiffs have each worked in excess of one year. Plaintiff Chavez has worked at the same store, performing the same duties, under the same compensation scheme for the last 8 years.

67. Defendants work together to determine delivery needs and make assignments to drivers. Act Fast assigns its drivers to a set schedule as described above while Merle's dispatchers communicate with the drivers in order to issue specific delivery instruction that Plaintiffs and Class members are required and have been required to follow

68. Defendant Act fast issues and has issued payment to Plaintiffs and Class Members for the work performed as described.

69. If a driver fails to appear at an assigned Merle's location for his or her shift, the Merle's dispatcher notifies Act Fast who then arranges for another driver from a different location to cover the shift, if one was available. This has been and remains the practice of Defendants.

70. When the drivers arrive at their designated Merle's location each morning, they are instructed to load their first assigned delivery into their personal vehicle, deliver those parts to Merle's customers as assigned by Merle's dispatchers then immediately return to Merle's for the next assigned delivery of the day. Drivers are not allowed to stop or detour between assigned deliveries. Merle's dispatchers budget an expected time for each delivery which the drivers are expected to meet.

71. Plaintiffs and Class members have made and continue to make deliveries to and pick-ups from businesses that are clients of Merle's, not customers of clients of the Drivers. Drivers are not free to solicit or make deliveries for any person or business that is not a customer of Merle's during their assigned work schedule. They are denied any entrepreneurial opportunities and cannot control their own profits. They are paid a

flat salary and their compensation does not vary if they make their deliveries faster or if they make more deliveries.

72. Drivers are and have been required to get pre-approval from Defendants before they can take any time-off or deviate from their set schedule.

73. Drivers have been and continue to be required to wear a specific uniform designated by Defendants.

74. On certain deliveries, Defendants require and have required Plaintiffs and Class members to display a Merle's magnetic decal or logo on their vehicles which serves to identify them as a Merle's driver.

75. Drivers are hired with no previous delivery experience and are trained by Defendants which includes an initial driver orientation and ride-along with an a more experienced driver to show the new hire the delivery routes and delivery procedure

76. Defendants' hiring criteria consists of requiring that a prospective driver have his or her own vehicle, automobile insurance, and a clean driving record.

77. The Drivers form an integral part of Defendants' respective businesses. Defendant Act Fast is a delivery company. Defendant Merle's relies upon the services of the Drivers to transport its automobile parts to its customers. Neither Defendant could provide the services it markets without delivery drivers.

78. On information and belief, a portion of the fee Defendant Merle's charges and collects form its customers for parts deliveries is designated as an expense for fuel. None of these funds are not remitted to the Drivers. Drivers must pay for all their fuel expenses out of their pocket and have no ability to offset any increase in fuel prices.

79. Defendants have misclassified and continue to misclassify Plaintiffs and Class Members as independent contractors when they are, in fact, employees of Defendants under federal and state law.

80. Defendants require drivers to work until they complete their last assigned delivery of each day often requiring drivers to work at an hourly rate of pay less than the applicable federal and state minimum wage of $7.25 and $7.90, respectively.

12

81. At all relevant times, Drivers have regularly worked and continue to work on average 10 hours per day and between 50 to 60 hours per week for the benefit of Defendants at weekly pay rates that range from $400 to $450.

82. As a result of the hours assigned to the Drivers, in certain weeks the Drivers receive less than the minimum wage for their work. For instance, in a week in which a driver works 60 hours for his $400 salary, his effective hourly rate is only $6.67 an hour, an amount below both the federal and state minimum wage.

83. Additionally, Defendants charge the Drivers a percentage of each pay check to transfer their compensation to a debit card account instead of issuing a paper check or using traditional bank direct deposit.

84. Beginning in or around October of 2013, Plaintiffs and Class members were no longer paid by check. Instead, they were issued prepaid debit cards for their compensation. The net value of these cards reflected a deduction of 2.5% of the Drivers' salary, which Act Fast explained to the drivers was a processing or service fee associated with issuing each debit card.

85. Plaintiffs and Class members were not consulted about the change in the method of payment and were given no choice in the matter.

86. In addition, Defendants unilaterally imposed the requirement that the Drivers, at their own expense, carry cargo insurance in addition to their normal personal automobile insurance. Plaintiffs and Class members were given no opportunity to negotiate with Defendants concerning this requirement. The cost of this insurance is automatically deducted from the Drivers' compensation and represents an amount approximately 4.7% of their salary.

## COUNT I
## FAILURE TO PAY OVERTIME AND MINIMUM WAGES IN VIOLATION OF THE FLSA
## (29 U.S.C. § 201 *et seq.*)

87. Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

88. The FLSA, 29 U.S.C. § 206, provides in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engage in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
> (C) $7.25 an hour

89. The FLSA, 29 U.S.C. § 207(a)(2) provides in relevant part:
> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

90. By the acts and omissions complained of above, including, *inter alia*, by failing to pay minimum wages and by failing to pay overtime wages for work in excess of 40 hours per week, Defendants violated the FLSA.

91. Plaintiffs and Class Members are entitled to be paid an amount no less than the hourly minimum wages for all hours worked and are entitled to receive compensation at the rate of one and one-half times their equivalent hourly rate of pay for each hour worked in excess of forty hours per workweek.

92. Plaintiffs and Class Members regular rate is their salaries divided by forty and their unpaid overtime equals one and one-half times that amount. In the pay periods in which Plaintiff and Class Members received the non-discretionary attendance bonus, that bonus should also be included in their regular rate of pay pursuant to 29 C.F.R. § 778.208.

93. Defendants' violations of the FLSA were willful and accordingly a three year statute of limitations applies, pursuant to 29 U.S.C. § 255.

94. Each improperly paid Plaintiff and Class Member, who performed or continues to perform services for Defendants for any time during the three years preceding this lawsuit, is entitled to notification of the pendency of this action and of his/her right to consent to becoming a party to this action. Notices should be sent to all Class Members, as defined above pursuant to 29 U.S.C. § 216(b).

95. Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA.

96. Plaintiffs and Class Members have been harmed and suffered damages and will continue to be harmed and suffer damages by being denied the applicable minimum wage and overtime wages in accordance with the FLSA, plus incurred costs and reasonable attorneys' fees.

97. As a result of Defendants' unlawful acts and violations of the FLSA, Plaintiffs and Class Members have been damaged and pursuant to 29 U.S.C. § 216(b) are entitled to recovery of the minimum wage, overtime wages, liquidated damages in an amount equal to the wages they are owed as unpaid minimum wages and overtime, attorneys' fees, costs and other compensation.

## COUNT II
## VIOLATION OF ARIZONA'S WAGE ACT
### (A.R.S. § 23-350, *et seq.*)

98. Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

99. Ariz. Rev. Stat. § 23-351 provides in relevant part:
   A. Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees. . .
   C. Each employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employee up to such date. . .
   (3) Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

100. Ariz. Rev. Stat. § 23-352 provides in relevant part:
   if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages

101. Ariz. Rev. Stat. § 23-352 provides in relevant part:
   No employer may withhold or divert any portion of an employee's wages unless one of the following applies:
   1. The employer is required or empowered to do so by state or federal law.
   2. The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization

15

>from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to the employer or a court orders otherwise.
>
>3. There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee.

102. Ariz. Rev. Stat. § 23-363 provides in relevant part:

>A. Employers shall pay employees no less than the minimum wage, which shall be six dollars and seventy five cents ($6.75) an hour beginning January 1, 2007.
>
>B. The minimum wage shall be increased shall be increased on January 1, 2008 and on January 1 of successive years by the increase in the cost of living. …

103. By the acts and omissions set forth above, including by failing to pay all wages due to Plaintiffs and Class Members, including applicable minimum wages under Arizona law and overtime wages and by improperly deducting portions of Plaintiffs' and Class Members' wage, by *inter alia*, charging a percentage of their compensation to pay them with a debit card, Defendants' have violated Arizona's Wage Act.

104. As a result of Defendants' violations of Ariz. Rev. Stat. § 23-351, Plaintiffs and Class Members have been harmed, have suffered substantial losses and have been deprived of compensation to which they were entitled and therefore are entitled to an award of the unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and costs, pursuant to A.R.S. § 23-355.

## COUNT III
## RESTITUTION/UNJUST ENRICHMENT

105. Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

106. Defendants' have been unjustly enriched by shifting a portion of the cost of doing business on to their employees. Such costs include, *inter alia*, the costs of fuel, vehicle maintenance, insurance, and the percentage of compensation Defendants'

charge their employees to deposit their compensation on a debit card in lieu of usual and customary methods of processing payroll.

107. Plaintiffs and Class Members are entitled to restitution and/or damages in *quantum meruit* for the value of the economic benefit they were required to bestow upon Defendants.

108. Any contracts Plaintiffs and Class Members entered into or were required to enter into as a condition of their employment that govern such payments are unconscionable and unenforceable.

109. Plaintiffs and Class Members are entitled to restitution for all of Defendants' costs or fees that have been levied upon Plaintiffs and Class Members together with prejudgment interest. Plaintiffs are similarly entitled to restitution for all fuel surcharges and other costs charged to Defendants' customers, clients, or other third parties that were paid to Defendants although the costs were incurred or paid for by Plaintiffs and Class Members and prejudgment interests on those amounts.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of Class Members, pray that judgment be entered against Defendants and that the Court award the following relief including, but not limited to:

A. A declaration that Defendants are joint employers of the Plaintiffs and Class Members;

B. A declaration that Plaintiffs and Class members are non-exempt employees of Defendants for purposes of the FLSA;

C. A declaration that Plaintiffs and Class members are employees of Defendants under Arizona law including, but not limited to, for purposes of the Arizona Wage Act;

D. A declaration that Defendants have violated and are violating the FLSA;

E. A declaration that Defendants have violated and are violating Arizona's Wage Act;

F. A declaration that Defendants' violations of the FLSA and the Arizona Wage Act are willful;

G. Awarding Plaintiffs and Class Members wages and overtime payments due to them for the hours worked by them for Defendants without proper compensation;

H. Awarding Plaintiffs and Class Members statutory, compensatory and punitive damages, liquidated damages, appropriate statutory penalties, treble damages and restitution to be paid by Defendants;

I. Awarding Plaintiffs and Class Members pre-judgment and post-judgment interest;

J. Requiring Defendants to comply with the FLSA and Arizona Wage Act by promptly paying Plaintiffs and Class members for all hours worked at the appropriate rates of pay;

K. Awarding Plaintiffs and Class Members attorneys' fees and costs of suit; and

L. Awarding Plaintiffs and Class Members such other and further relief as the Court deems just and proper, at law and in equity.

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Dated this 7th day of March, 2014.

MARTIN &BONNETT, P.L.L.C.

By: /s/ Daniel Bonnet
Susan Martin
Daniel Bonnett
Jennifer Kroll
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone (602) 240-6900
*Attorneys for Plaintiffs*

KENNEDY HODGES, LLP
Galvin B. Kennedy (will apply *pro hac vice*)
gkennedy@kennedyhodges.com
John A. Neuman (will apply *pro hac vice*)
jneuman@kennedyhodges.com
711 W. Alabama Street
Houston, Texas 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
*Of Counsel*